UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENT LEE MILLER,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social<br>Security,<br><br>    Defendant. | No.  1:16-CV-03180-RHW<br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Plaintiff Brent Lee Miller brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383F.  After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

# I.    Jurisdiction

Mr. Miller filed his application for supplemental security income benefits on July 27, 2012. AR 187-92.  His alleged onset date is November 20, 2006. AR 187. His application was initially denied on September 19, 2012, AR 105-08, and on reconsideration on July 24, 2013, AR 114-19.

Administrative Law Judge ("ALJ") Deborah J. Van Vleck held a video hearing on February 4, 2015. AR 38-76. On March 27, 2015, the ALJ issued a decision finding Mr. Miller ineligible for disability benefits. AR 22-34. The Appeals Council denied Mr. Miller's request for review on August 22, 2016, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Miller timely filed the present action challenging the denial of benefits on October 11, 2016. ECF No. 3. Accordingly, Mr. Miller's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

## III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  If the evidence in the record "is susceptible to more than one rational

interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").  Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.  The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Mr. Miller was born in 1972 and has a limited education. AR 33. He has past work experience as a child monitor and flooring installer. AR 24, 33.

### V.    The ALJ's Findings

The ALJ determined that Mr. Miller was not under a disability within the meaning of the Act since July 27, 2012. AR 22-34.

**At step one**, the ALJ found that Mr. Miller had not engaged in substantial gainful activity since July 27, 2012, the date of his application (citing 20 C.F.R. §§ 416.971 *et seq.*). AR 24.

**At step two**, the ALJ found Mr. Miller had the following severe impairments: degenerative changes of the right ankle, status post fracture requiring open reduction and internal fixation in November 2006; visual field limitation in the right eye secondary to nuclear sclerosis, myopia, and astigmatism; mild to severe mixed hearing loss in the right ear and borderline to mild sensorineural hearing loss in the left ear; and a mental impairment diagnosed to include depressive disorder, not otherwise specified, alcohol abuse, history of methamphetamine abuse, and borderline intellectual functioning (citing 20 C.F.R. §§ 416.920(c)). AR 24-25.

At **step three**, the ALJ found that Mr. Miller did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1 (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926). AR 25-27.

At **step four**, the ALJ found Mr. Miller had the following residual functional capacity:  He can perform a range of light and sedentary work except that he is limited to occasionally lifting and carrying twenty pounds and frequently lifting and carrying ten pounds. He can stand and/or walk four hours in an eight-hour

workday and sit six hours in an eight-hour workday. He can operate hand and foot controls within the lifting and carrying restriction of the light work restrictions of no more than twenty pounds occasionally and ten pounds frequently, but should no more than frequently push and pull within that weight with right lower extremity foot controls. Mr. Miller is limited to occasionally climbing ramps and stairs and never climbing ladders, ropes, or scaffolds. He is limited to frequent stooping and occasional balancing, crouching, kneeling, and crawling. Due to his visual deficits, he is limited to avoiding ordinary hazards in the work place, such as boxes on the floor or doors ajar. He is capable of reading ordinary newspaper print with corrective lenses. Mr. Miller should never work in the presence of unprotected heights or hazardous machinery. He should never be required to operate a motor vehicle as part of the job. He should avoid working in the presence of concentrated exposure to wetness. He should never work in the presence of concentrated exposure to vibrations. He should not work in an environment with a noise level above moderate, as defined by the Dictionary of Occupational Titles ("DOT"). Mr. Miller is limited to performing simple and routine tasks and can use judgment consistent with that type of work. He can deal with changes in the work setting required for simple work-related decisions. He should have no more than occasional interaction with the general public.

The ALJ determined that Mr. Miller was unable to perform his past relevant work as a child monitor. AR 32-33.

At **step five**, the ALJ found that in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Miller can perform. AR 33-34. These include toy stuffer, document preparer, and assembler. *Id.* The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id.*

## VI.    Issues for Review

Mr. Miller argues that the Commissioner's decision is contains legal error and is not supported by substantial evidence. Specifically, he argues the ALJ committed reversible error by: (1) improperly assessing whether Mr. Miller met Listing 12.05; (2) improperly weighing the medical opinion evidence; (3) improperly assessing Mr. Miller's residual functional capacity and finding he could adjust to other work in the economy; and (4) discrediting Mr. Miller without providing specific, clear, and convincing reasons for doing so. ECF No. 13 at 4.

//

//

//

//

**VII.  Discussion**

**A. The ALJ did not err finding that Mr. Miller did not satisfy the criteria for Listing 12.05.**

The ALJ found that Mr. Miller did not satisfy the criteria for Listing 12.05, intellectual disorder. AR 27. Mr. Miller argues that he does qualify under Paragraph C. ECF No. 13 at 4-8. A claimant will satisfy Listing 12.05C and demonstrate intellectual disability, thus ending the five-step inquiry at step three, if the claimant can show: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). However, in addition to the requirements of Paragraph C, the claimant must also satisfy the general requirements of Listing 12.05

The ALJ found that the evidence does not support the contention that Mr. Miller "suffers from significantly subaverage general intellectual functioning with deficits in adaptive functioning" that initially manifested before age 22, a general requirement under Listing 12.05.[1] AR 27.  Adaptive functioning is the

---

[1] The ALJ also found that Mr. Miller did not meet the requirements of Paragraph C because his full scale was 75 and he lacked any physical or mental impairments imposing an additional and significant work-related limitation. AR 27. This was in error because Mr. Miller also had a verbal comprehension score of 70, and when there are multiple scores, the lowest will satisfy Listing 12.05C. 20 C.F.R. Part 404, Subpart P, App. 1 § 12.00(D)(1)(b). The Commissioner also concedes this fact. The error, however,

"effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 329 (1993).

The ALJ made the finding that there is no evidence of record to support deficits in adaptive functioning. AR 27. This is supported by Mr. Miller's work history, his auto racing hobby, his numerous relationships with women, his activities of daily living (including chores), and his lack of trouble socializing and reading books and magazines. AR 48-49, 258, 265, 267-68, 284. Further, Dr. Alex Fisher, PhD, found Mr. Miller did not meet the criteria for Listing 12.05 and that Mr. Miller had only mild restrictions in his activities of daily living. AR 96. Examining physician Dr. Marie Ho, MD, also found that Mr. Miller is able to do his activities of daily living and provided numerous examples. AR 258.

The ALJ also found that Mr. Miller did not meet the requirements of Paragraph C because his full scale was 75 and he lacked any physical or mental impairments imposing an additional and significant work-related limitation. AR 27. This was in error because Mr. Miller also had a verbal comprehension score of 70, and when there are multiple scores, the lowest will satisfy Listing 12.05C. 20 C.F.R. Part 404, Subpart P, App. 1 § 12.00(D)(1)(b). The Commissioner also

is harmless because Mr. Miller did not satisfy the general requirements of Listing 12.05.

concedes this fact. The error, however, is harmless because Mr. Miller did not satisfy the general requirements of Listing 12.05.

**B**. **The ALJ did not err in evaluation of the medical record.**

**1. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When

rejecting a treating provider's opinion on a psychological impairment, the ALJ

must offer more than his or her own conclusions and explain why he or she, as

opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

Cir. 1988).

**2. The opinion of Dr. Johnson.**

Dr. Philip L. Johnson, PhD, performed a psychological evaluation on Mr.

Miller on August 27, 2012, and provided a written report. AR 263-71. In addition

to conducting an interview with Mr. Miller and his father, Robert Miller, Dr.

Johnson performed objective testing. *Id.* Dr. Johnson concluded that Mr. Miller fell

somewhere in the borderline to mild range of mental retardation, and that he had

some memory problems. AR 270. Otherwise, the Medical Source Statement is a

repetition of statements made by primarily by Mr. Miller and some by his father.

*Id.* For this reason, the ALJ gave little weight to the opinion.

An ALJ may reject a medical opinion that is based largely on self-reports

that were properly discounted as incredible. *Morgan v. Comm'r Soc. Sec. Admin.*,

169 F.3d 595, 602 (9th Cir. 1999). The ALJ performed a thorough analysis of Mr.

Miller's credibility and properly discounted it. AR 29-31, *see infra* pp. 19-21.

While Dr. Johnson did perform objective testing, his Medical Source Statement is

mostly a composition of statements by others. ("[H]is father feels..," "he said..,"

etc.) AR 270-71. The fact Dr. Johnson reviewed records is unhelpful to challenge

the ALJ's position because Mr. Miller never received any outpatient or inpatient

mental health treatment. AR 26. Moreover, the only statement in the Medical

Source Statement that is based on objective testing (Mr. Miller's intellectual

capacity and memory issues) is accounted for by the ALJ in the residual functional

capacity with limitations to short, routine tasks and simple work-related decisions.

AR 28. Thus, the Court finds substantial evidence and legal support for the ALJ's

consideration of Dr. Johnson's opinion.

### 3. The opinion of Dr. Hopp.

Dr. Richard H. Hopp, MD, performed a visual examination of Mr. Miller on

September 10, 2012. AR 276-80. Dr. Hopp found that Mr. Miller had significantly

impaired uncorrected vision in his right eye, but he did not specifically provide any

functional limitations. *Id.* The ALJ afforded Dr. Hopp's opinion great weight

because he examined Mr. Miller and his opinion is consistent with the record as a

whole. AR 31. Mr. Miller argues not that the weight given to Dr. Hopp's opinion

was inappropriate, but rather that the ALJ did not account for Dr. Hopp's findings

in step two, the calculation of his residual functional capacity, and at step five.

ECF No. 13 at 11-12. The Court does not agree.

As a preliminary matter, throughout the record Mr. Miller has alleged only

limitations stemming from his right eye problems, not his left. AR 65-66, 78, 257-

58. Nevertheless, the ALJ did acknowledge the diagnoses of myopia and myopic astigmatism, conditions found in the left eye. AR 278. The ALJ also added that the left eye acuity uncorrected is only 20/60, not a particularly significant impairment. AR 29, 276. Further Dr. Hopp's report shows this is for distance only, as Mr. Miller's left eye's near vision was 20/20. AR 276.

An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

Even if his left eye conditions were severe, of which Mr. Miller has not persuaded the Court, the error would be harmless. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an impairment in step two is harmless error where the ALJ includes the limitations of that impairment in the determination of the residual functional capacity). The ALJ limits Mr. Miller to avoiding ordinary hazards in the work place, such as boxes on the floor and doors

ajar, and that he could read ordinary newspaper with corrective lenses. AR 29.

These are reasonable accommodations for the mild vision loss in his left eye.

Mr. Miller also alleges that the residual functional capacity is invalid and thus the findings at step five are improper because the ALJ included that he was able to read newspaper with corrective lenses, despite the impairment in his right eye. ECF No. 13 at 14-15. While Mr. Miller did testify to his inability to read a newspaper at his hearing due to his vision, AR 58-59, the ALJ evaluated Mr. Miller's credibility and found his subjective symptom testimony to be unreliable. *See infra* at 19-21. Moreover, Dr. Hopp does not provide any specific limitations in his report regarding Mr. Miller's near vision with corrective lenses that contradicts the ALJ's findings. *See* AR 276-81. Finally, the ALJ's findings are also supported by Dr. Ho, who specified visual limitations only related to Mr. Miller's depth perception, AR 262, which the ALJ accounted for with the limitation on ordinary workplace hazards, AR 29. The Court finds no error with the treatment of Dr. Hopp's report, the ALJ's calculation of Mr. Miller's residual functional capacity based off Dr. Hopp's report, or the hypothetical posed to the vocational expert at step five.

### 4. The opinion of Robert Miller.

Mr. Miller's father, Robert, does not provide a formal statement to the ALJ or within the record, but he did speak with Dr. Johnson, and his statements were

incorporated into Dr. Johnson's opinion. *See supra* at 13-14. Mr. Miller alleges that Robert Miller's statements to Dr. Johnson were competent lay witness testimony that should have been properly considered unless properly discounted. ECF No. 13 at 13-14.

Lay witness testimony should generally be considered unless the ALJ provides germane reasons for disregarding it. *Lewis*, 236 F.3d at 503. The problem with the challenge to Robert Miller's statements fails for multiple reasons. First, Robert Miller did not provide testimony, but rather he had a conversation with Dr. Johnson that is referenced within Dr. Johnson's report. AR 263. There was no actual statement from Robert Miller for the ALJ to consider. Instead, the ALJ considered Dr. Johnson's opinion as a whole, including the references to Robert Miller's statements. AR 263-71. The Court has already addressed the ALJ's treatment of Dr. Johnson's report. *See supra* at pp.13-14.

Second, Robert Miller's statements referenced by Dr. Johnson are largely duplicative of Mr. Miller's own testimony. AR 263-71. "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the finding will be upheld. *Molina*, 674 F.3d at 1117; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Finally, the only limitation from Robert Miller that Dr. Johnson felt to be significant enough to include in his Medical Source Statement was in concentration, persistence, and pace, and this was accounted for in the residual functional capacity's limitation to simple, routine tasks. *See Stubbs-Danielson v. Astrue*, F.3d 1169, 1173-74 (9th Cir. 2008) (finding that a limitation to simple tasks adequately accounted for moderate limitations in concentration, persistence, and pace). For all of these reasons, the Court finds no error in the ALJ's failure to explicitly discuss statements made by Robert Miller.

### C. The ALJ did not err by failing to account for Mr. Miller's obesity.

Mr. Miller argues that his residual functional capacity calculation was improper because the ALJ failed to account for his obesity. ECF No. 13 at 16-17. However, Mr. Miller does not point to any functional limitations in the record stemming from his obesity, but rather a single doctor's note that he was obese and general potential problems for obese individuals. ECF Nos. 13 at 16-17, 15 at 8.

Upon physical examination, Dr. Ho noted that Mr. Miller was obese with a body mass index of 32.2. AR 258. In her Functional Assessment/Medical Source Statement, however, Dr. Ho does not refer to Mr. Miller's obesity. AR 261-62. The functional limitations opined by Dr. Ho were given great weight by the ALJ, even "giving [Mr. Miller] the benefit of the doubt" and limiting him to a slightly lower grade of work than the overall assessment by Dr. Ho. AR 31, 261-262.

Additionally, Mr. Miller fails to demonstrate that his obesity had lasted or could have been expected to last for a continuous period of at least twelve months. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (explaining the requirements for a medically determinable impairment). Mr. Miller testified at his hearing that he weighed "about 183 pounds" and was 5'7". AR 47. He also testified that his weight fluctuated, and he was at his highest weight in July 2012, just one month prior to Dr. Ho's evaluation. AR 47-48, 257. This testimony of weight fluctuation is further support by the record, as in 2014 his body mass index was 22.15 and 25.10, neither falling within the obese range on the body mass index scale. AR 285, 289, 295.

Because Mr. Miller has failed both to show the requisite time period for impairment or any evidence in the record of functional limitations, the Court does not find error.

**D. The ALJ did not err in the determination of Mr. Miller's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject

the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen,* 80 F.3d at 1284.

The ALJ provided numerous reasons for discounting Mr. Miller's credibility. In particular, Mr. Miller's activities do not support his subjective statements. Despite allegations of a disabling ankle condition, Mr. Miller was able to work off and on after his ankle injury for several years installing flooring. AR 29, 258, 261. He also reported having a hobby of auto racing, completing yard work, socializing with friends, having multiple romantic relationships, and performing household chores, all of which were inconsistent with his allegations. AR 258, 268, 284. Further, Dr. Ho stated that Mr. Miller is able to complete his activities of daily living. AR 258.

Mr. Miller has very few medical records for his physical or mental impairments. Failure to seek treatment is a valid reason for an ALJ to discredit subjective testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Mr.

Miller never received any follow up care after his surgery or sought treatment for pain in his ankle, which would indicate it was not as severe as he alleges. Likewise, Mr. Miller never sought inpatient or outpatient mental health treatment. AR 263. Nevertheless, he visited the emergency room multiple times during 2014, indicating he does have access to healthcare, but at no time during these visits did he report pain or other issues with his right ankle or mental health concerns. AR 282-311.

The ALJ's finding that Mr. Miller's subjective testimony was not entirely credible is supported by substantial evidence, and the reasons provided are specific, clear, and convincing.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

///

///

///

3.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 27th day of June, 2017.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge